Milton Allen BYRD, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15893.

Court of Criminal Appeals of Oklahoma.

Sept. 1, 1971.

Rehearing Denied Oct. 21, 1971.

Andrew T. Dalton, Jr., appellate Public Defender, Tulsa, for plaintiff in error.

Larry Derryberry, Atty. Gen., Ray Naifeh, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge.

Milton Allen Byrd, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Tulsa County for the offense of Robbery with Firearms, After Former Conviction of a Felony. His punishment was fixed at a term of not less then thirty-three (33), nor more than ninety-nine (99) years imprisonment, and from said judgment and sen-tence, a timely appeal has been perfected to this Court.

Briefly stated, the evidence at the trial adduced that on December 21, 1969, Robert Gambell was employed as a lessee of the Yellow Cab Company. He testified that at approximately 3:00 in the morning he was flagged down by a person who wanted to go to the Manhattan Club in Tulsa, Oklahoma. The passenger, who was subsequently identified as the defendant, got into the front seat of his cab. He drove the defendant to the club and discovered it was closed. He asked the defendant to pay the fare, and then the defendant pulled out a gun and demanded his money.

He attempted to grab the gun and a brief struggle ensued, where he was struck on the nose by the gun. The defendant ordered him to get under the wheel and again said, "give me your money." He gave the defendant his money, which was approximately Forty ($40.00) Dollars. The defendant demanded more money and he replied that was all he had. The defendant got out of the cab and ordered Gambell to drive off and not to look back.

He testified that as he drove off, he informed the dispatcher that there was an emergency and that he had been robbed. He drove the cab back to where the defendant was and unsuccessfully attempted to run over the defendant in the parking lot. When he was about 40 or 50 feet away from the defendant, the defendant raised his right arm and fired two shots at him. He attempted to follow the defendant, but lost him. He next observed the defendant approximately fifteen minutes later in another yellow cab belonging to Ed Allen. He observed the officer remove a pistol from under the front seat of Allen's cab.

Ed Allen testified he was driving his cab in the early morning hours on December 21, 1969. Shortly before he heard of the robbery on his two-way radio, he received a call to pick up a passenger at approximately three blocks from the Manhattan. He pulled up to the house and honked. He

waited about five minutes until the defendant came out of a vacant lot and got into the cab. Allen was suspicious and drove the defendant to the location of a policeman and Gambell. The police took the custody of the defendant. He testified that an officer found a .22 caliber pistol under the front seat of his cab. He had not seen the gun before.

Detective Johnson testified that he first observed the defendant getting out of a yellow cab near the Manhattan Club. He told the defendant to put his hands on top of the police unit, advised him of his Miranda rights, and searched him. He observed a .22 caliber bullet fall to the ground as the defendant took a wallet out of his pocket. Five additional bullets were found in the defendant's wallet. He identified the .22 caliber pistol found at the scene. The pistol was unloaded, and would hold a total of eight shots, and appeared to have been fired lately.

The Court conducted a Jackson v. Denno hearing outside the presence of the jury concerning the questioning of the defendant to determine if he was properly advised of his constitutional rights. At the conclusion of the hearing the Court overruled the defendant's motion to strike the testimony of Officer Johnson.

Johnson then testified that after advising the defendant of his constitutional rights, the defendant responded that he understood them. He had a conversation with the defendant in the police unit. The defendant stated that he knew he was in trouble and was willing to tell him what happened. He admitted robbing the cab driver, unloading the weapon, and throwing away the money. He denied shooting at Gambell.

The defendant testified in his own behalf. He testified that early in the morning of December 21, he had occasion to hail a cab. He was going to a girlfriend's house, whom he had talked with earlier. He did not know the exact address, but told the driver that it would be in the vicinity of the Manhattan. The defendant

was reluctant to give the name of the girlfriend, but ultimately testified that it was Janet McCloud.

He testified that he did not have any money, but that the girlfriend told him that she would pay for the fare. When they arrived at her house, he discovered she was not there. He and the driver had a conversation about how he was going to pay the fare. He agreed to let the driver hold his pistol, but after further consideration, decided not to do so. He argued some more with the driver, and then got out and slammed the door. He sat on the girl's porch for about fifteen minutes, and then walked next-door, and asked the occupant to call him a cab. He denied pointing the gun at Gambell or robbing him. He admitted the gun was his, a conviction in Texas for Burglary, and a conviction in Oklahoma for Breaking and Entering. He testified that all the State's witnesses had lied in some form or fashion.

The State called Garrett Baker in rebuttal. He testified that he was employed by the Yellow Cab Company as a dispatcher. He testified that in the early morning of December 21, he heard Robert Gambell call on the radio an emergency that he was being robbed, and that he heard a gunshot.

Janet McCloud testified that she knew the defendant. She did not arrange to meet the defendant at her house, and no arrangement was made for her to pay the cab fare.

■ The first proposition alleges that the Court erred in admitting the confession for the reason that the defendant was not properly advised of his rights. The Record does not support this proposition. Officer Johnson testified that he advised the defendant that he had a right to remain silent, that any statement he made could and would be used against him in a court of law, that he had the right to have an attorney present while questioning was being conducted, and that if he was unable to provide the funds for such attorney, the State of Oklahoma was under an obligation to provide an attorney for him to be

present during his questioning, if he so desired. These rights were explained to the defendant immediately upon arrest. The defendant stated that he fully understood his rights, and that he had been informed of them several times in the past few weeks. Prior to the conversation in the car, the defendant was again advised of the rights wherein he stated that he understood and was willing to talk. Further, he testified that the defendant signed a written waiver of his rights at the police station.

We are of the opinion that the trial court properly ruled after the Evidentiary Hearing that the defendant was properly advised of his rights in compliance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 964, that the defendant waived his right to remain silent and to counsel before questioning and that his confession was freely made.

■ The final two propositions contend that the punishment is excessive and that the jury was prejudiced by improper comments by the District Attorney in his closing argument. The District Attorney's remarks of which the defendant now complains were as follows:

"And now what does he do? Of course he gets him a lawyer. You guys are paying for his lawyer. You are paying for this man's lawyer." (Tr. 143)

The Record does not reveal that the defendant objected to these comments, nor was the defendant's closing argument included in the Record. It is apparent that the District Attorney was provoked by defendant's closing argument. We note that the District Attorney stated:

"Until the closing argument by counsel I really wasn't angry but I am somewhat angry now, * * * Counsel * * * has impugned my integrity. He has said to you, 'well Mr. Fallis and Mr. Hagedorn and the State of Oklahoma are part of a conspiracy, beginning with Mr. Gambell.' He lied. Mr. Allen * * * lies too. And the police officer * * * lies. And Mr. Fallis just puts them on

the stand. That means I am guilty of suborning perjury." (Tr. 141)

In Pitts v. State, Okl.Cr., 431 P.2d 449 (1966), Judge Brett stated:

"It is well settled that counsel for defense must object to the alleged improper statements by the prosecutor at the time they are made, and move the court to exclude them from the consideration of the jury; and to make a proper record so that this Court may determine from an examination of the record, whether the alleged improper remarks were actually made, and if so, whether or not they were invited or provoked by opposing counsel's remarks."

We are of the opinion that the comments concerning defendant's lawyer fees being paid for by the jury were improper. A defendant's financial status has no bearing on the issues to be decided by the jury. The defendant, however, did not properly protect the record to raise this issue on appeal. It would further appear that the District Attorney's remarks were invited and provoked by opposing counsel's remarks.

■ We have consistently held that this Court is without authority to modify a sentence unless we can conscientiously say under all the facts and circumstances that the sentence was so excessive as to shock the conscience of the Court. Roberts v. State, Okl.Cr., 473 P.2d 264 (1970).

■ From the foregoing statement of facts, wherein the defendant struck the victim with the weapon, robbed him and fired two shots at him, at which time he was on ten years' probation for a previous conviction, we cannot conscientiously say that the sentence shocks the conscience of this Court.

The Record is free of any error which would require reversal or justify modification and the judgment and sentence is accordingly affirmed.

BRETT, Judge (specially concurring):

I concur, but add that the prosecutor should have restrained himself from mak-

ing the improper remarks about the Public Defender. "Being provoked" is not sufficient excuse for such remarks.

NIX, Judge (dissenting):

I do not concur, and consider the prosecutor's remark with reference to the Public Defender inexcusable, most improper and highly prejudicial to defendant's case. These type remarks should be carefully avoided.